## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

YOLANDA DANIELS, SHENEKA
WILLIAMS, and TANISHA
WASHINGTON,

    Plaintiffs,

                                   Case No.:

v.

WEST SHORE LLC d/b/a THE GREENS
AT OLD ST. AUGUSTINE, LIVE OAKS
AT KILLEARN, and 2305 AT KILLEARN,

    Defendant.

_____/

## DEFENDANT'S NOTICE OF FILING NOTICE OF REMOVAL

Defendant WEST SHORE LLC ("West Shore" or "Defendant"), by and through its undersigned attorneys and pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, respectfully files this Notice of Removal giving notice of the removal of this action from the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida, to the United States District Court for the Norther District of Florida, Tallahassee Division. In support of this Notice of Removal, Defendant states as follows:

### I. PROCEDURAL HISTORY

    1.    On or about May 18, 2020, Plaintiffs, Yolanda Daniels, Sheneka Williams, and Tanisha Washington (each, a "Plaintiff"; collectively, "Plaintiffs") filed a Complaint in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida entitled *Yolanda Daniels, Sheneka Williams, and Tanisha Washington*, designated as Case No.; 20-CA-000944 (the "State Court Action"), wherein they alleged experiencing race discrimination while working at Defendant's various apartment complexes: The Greens at

Old St. Augustine, Live Oaks at Killearn, and 2305 at Killearn. Plaintiffs' Complaint ("Compl."), ¶¶ 8-21 (in re Ms. Williams); ¶¶ 22-36 (in re Ms. Washington); and ¶¶ 37-47 (in re Ms. Daniels). Plaintiffs Washington and Williams have also alleged retaliation as part of their lawsuit. Compl. ¶¶ 57-63.

2. On August 19, 2020, West Shore was served with a Summons and Complaint through its registered agent. A copy of the Summons and Complaint reflecting service, as well as true and legible copies of all other papers on file in the State Court Action are attached hereto as **Exhibit "A."** Thus, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), within thirty-days (30) from the date on which the Summons and Complaint were served. The judge presiding over the State Court Action has not entered any orders, and there are no pending motions.

3. The District and Division embracing the place where the State Court Action is pending is the United States District Court for the Northern District of Florida, Tallahassee Division. *See* 28 U.S.C. §§ 89(b), 1441(a).

4. This case is a civil action that may be removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, because it is an action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## II. DIVERSITY OF CITIZENSHIP

5. To qualify for diversity jurisdiction, there must be complete diversity between the parties, which means no plaintiff may be a citizen of the same state as the defendant. *See Pease v. Medtronic, Inc.*, 6 F. Supp. 2d 1354, 1356 (S.D. Fla. 1998) (citations omitted).

6. A natural person is a citizen of a state within the meaning of § 1332, when he or she is both a citizen of the United States and a domiciliary of the state at issue. *Brickell*

*Bay Entm't Co. v. Pardillo-Cid*, 2008 WL 11417538, at *2 (S.D. Fla. Oct. 7, 2008). For purposes of diversity jurisdiction, citizenship is equivalent to domicile. *Id.* (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Id.* (citing *McCormick*, at 1257-58.

7. Pursuant to 28 U.S.C. § 1332, "a limited liability company is a citizen of any state in which a member of the company is a citizen." *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). Here, Defendant is a foreign limited liability company (Massachusetts) with its principal place of business in Massachusetts. There are only two members of West Shore: Lee Rosenthal and Steven Rosenthal, both of whom are domiciled in Massachusetts. *See* Declarations of Lee Rosenthal and Steve Rosenthal attached hereto as Exhibits "**A**" and "**B**," respectively. Accordingly, West Shore is a Massachusetts citizen.

8. In the Complaint, Plaintiffs each state they reside in Florida. Compl. §§ 3-5.

9. Further, Plaintiffs Washington and Williams listed Tallahassee, Florida on their respective charges of discrimination, which they signed under penalty of perjury. Plaintiff Daniels listed Morristown, New Jersey on her charge. Based on all known information, each Plaintiff's citizenship is diverse from Defendant for purposes of 28 U.S.C. § 1332.

10. In summary, complete diversity exists in this case because Plaintiffs are citizens of different states than Defendant. Accordingly, for the purposes of 28 U.S.C. § 1332(a)(1), diversity jurisdiction exists between the parties at the time of filing this Notice of Removal.

### III. AMOUNT IN CONTROVERSY

11. Pursuant to 28 U.S.C. § 1332(a), diversity jurisdiction also requires the amount in controversy to "exceed the sum or value of $75,000, exclusive of interest and costs."

12. Plaintiffs' Complaint alleges damages exceeding $30,000.00 for each of their claims, exclusive of costs and interests. Where, as here, the initial pleading does not demand a specific sum, the notice of removal may assert the amount in controversy. 28 U.S.C. § 1446(c)(2)(A). A removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and need not submit evidence in support thereof. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

13. In assessing the amount in controversy, the Court considers the value of the plaintiff's claims by estimating the amounts that "will be put at issue during the litigation," regardless of the plaintiff's likelihood of success. *S. Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010); *Jackson v. Am. Bankers Ins. Co.*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997), citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (finding the "appropriate measure is the litigation value of the case assuming the allegations of the complaint true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint.").

14. "[The] Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010) (internal quotation marks omitted). Thus,

courts may use their judicial experience and common sense to determine whether the case stated in a complaint meets federal jurisdictional requirements. *Id*. at 1062.

15. A plain reading of Plaintiffs' Complaint – together with the jurisdictional allegations herein – demonstrates the amount in controversy exceeds the sum of $75,000.00, and thus, meets the jurisdictional amount required for removal based on diversity. *See* 28 U.S.C. § 1332(a). In summary, Plaintiffs allege West Shore discriminated against them on the basis of their race, and retaliated against Ms. Washington and Ms. Williams following their opposition to alleged, unlawful employment practices. Based on those alleged facts, Plaintiffs are seeking "lost back and front pay, interest on pay, bonuses, and other benefits," in addition to possible punitive damages and injunctive relief. Compl. ¶¶ 57 & 63. Compensatory damages, lost wages, punitive damages, and attorneys' fees are all recoverable pursuant to Plaintiffs' alleged statutory basis for relief: § 760.11, Fla. Stat.

## IV. <u>LOST WAGES</u>

16. As to lost wages, back pay should be calculated from the time of the adverse employment action through the date of trial. *Fusco v. Victoria's Secret Stores, LLC*, 806 F. Supp. 2d 1240, 1244 (M.D. Fla. 2011) (calculating "back pay and mitigation from the time the complaint was filed on April 25, 2011, to June 22, 2012, an estimated trial date approximately 12 months after the case was removed to this Court."); *Booker v. Doyon Sec. Services, LLC*, 2017 WL 5202682, at *3 (S.D. Fla. Jan. 20, 2017) (accepting view that backpay should be calculated through trial). *See also Pope v. 20/20 Commc'ns, Inc.*, 2015 WL 5165223, at *2 (M.D. Fla. Sept. 2, 2015) (back-pay damages calculated through proposed date of trial); *Hendry v. Tampa Ship, LLC*, No. 8:10-cv-1849-T-30-30TGW, 2011 WL 398042, *2 (M.D. Fla. Feb. 4, 2011) ("Back pay is generally calculated from the date

5

of the adverse employment action to the date of judgment."); *Morgan v. Sears, Roebuck & Co.*, No. 12-60055-CIV, 2012 WL 2523692, at *2 (S.D. Fla. June 29, 2012) (calculating back pack from time of termination through expected trial date, noting the court may use its "judicial experience and common sense" in making that determination); *see Deel v. Metromedia Rest. Services, Inc.*, 3:05CV120/MCR, 2006 WL 481667, at *4 (N.D. Fla. Feb. 27, 2006) (considering back-pay through trial in determining amount in controversy); *Morris v. Plant Performance Services, LLC*, 5:11-CV-350/RS-EMT, 2011 WL 6203497, at *1 (N.D. Fla. Dec. 13, 2011) (same). *See also Penalver v. N. Elec., Inc.*, No. 12-80188-CIV, 2012 WL 1317621, at *2 (S.D. Fla. Apr. 17, 2012) (calculating back pay through the "first possible trial date" approximately ten months after removal); *Messina v. Chanel, Inc.*, No. 10-24518-CIV, 2011 WL 2610521, at *2 (S.D. Fla. July 1, 2011) (including back pay through estimated time of trial eighteen months in the future).

17. Indeed, the Eleventh Circuit has approved calculating back pay through the estimated time of trial for purposes of the amount in controversy. *See Wineberger v. Racetrac Petroleum, Inc.*, No. 5:14-cv-653-Oc-30PRL, 2015 WL 225760, at *3 (M.D. Fla. Jan. 16, 2015) (calculating back pay from termination through estimated trial date of twenty-four months after complaint was filed, along with front pay of one year), *aff'd by Wineberger v. RaceTrac Petroleum, Inc.*, 672 F. Appx. 914, 917 (11th Cir. 2016) (approving same).

18. At the time of her termination on or about September 18, 2019, (Compl., ¶ 22), Plaintiff-Washington was earning $46,000 per year in base salary, or nearly $3,833.00, or nearly $22.11 per hour. As of the date of this removal, it has been approximately 52 weeks since Plaintiff's employment ended. Accordingly, Plaintiff's back pay to date is

approximately $46,000. Adding an additional year of back pay to account for the expected time between now and trial, Plaintiff could recover approximately **$92,000 in total back pay**. Thus, the potential for back pay alone easily satisfies the jurisdictional threshold.

19. At the time of her resignation on or about September 3, 2019, (Compl., ¶ 37), Plaintiff-Daniels was earning $42,000 in base salary, or $20.20/hour. As of the date of this removal, it has been approximately 52 weeks since Plaintiff's employment ended. Accordingly, Plaintiff's back pay to date is approximately $42,000.00. Adding an additional year of back pay to account for the expected time between now and trial, Plaintiff could recover approximately **$84,000.00 in total back pay**. Thus, the potential for back pay alone easily satisfies the jurisdictional threshold.

20. At the time of her termination on or about October 2, 2019, (Compl., ¶ 8), Plaintiff-Williams was earning $40,000 per year in base salary, or roughly $3,333.33 per month, or nearly $19.23 per hour for full time work. As of the date of this removal, it has been approximately 11 months since Plaintiff's employment ended. Accordingly, Plaintiff's back pay to date is approximately $36,663. Adding an additional year of back pay to account for the expected time between now and trial, Plaintiff could recover approximately **$73,326** in total back pay.

21. Front pay further augments the amount of lost wages in this action. *Brown v. Cunningham Lindsey U.S., Inc.*, 2005 WL 1126670, at *4-5 (M.D. Fla. May 11, 2005) (crediting back pay from the time of plaintiff's termination through the estimated time of trial, and crediting one year of front pay as a conservative measure of potential future lost wages). Here, one year of front pay would add another **$46,000** for Plaintiff-Washington;

7

**$42,000** for Plaintiff-Daniels; and **$40,000** for Plaintiff-Williams to the amount in controversy.

## V. COMPENSATORY DAMAGES

22. Additionally, district courts routinely include compensatory damages in the form of pain and suffering, such as Plaintiffs claim in this case, in the jurisdictional amount as well. *See Estevez-Gonzalez v. Kraft, Inc.*, 606 F. Supp. 127, 129 (S.D. Fla. 1985) (including unspecified amount of compensatory damages for "physical and mental pain, physical handicap, impairment of working ability, injuries permanent or continuing in nature, and medical expenses"); *Bartley v. Starwood Hotel & Resorts Worldwide, Inc.*, No. 07-80637-CIV, 2007 WL 2774250, at *1 (S.D. Fla. 2007) (finding the complaint "clearly established" amount in controversy based, in part, on general allegations of pain, mental anguish, scarring, disfigurement, loss of enjoyment of life, medical expenses, etc.). *Wineberger*, 2015 WL 225760 at *4, *aff'd by Wineberger*, 672 F. Appx. at 917 (including emotional distress damages in the range of $5,000-$30,000 under the FCRA for purposes of calculating the amount in controversy, when the complaint merely alleged emotional distress in the nature of "that which would have been experienced by most individuals suddenly terminated from their jobs for unsavory reasons.").

23. Further, the Eleventh Circuit has held objective medical testimony is not necessary to support an award of emotional distress damages under FCRA, and plaintiff's lay testimony concerning the emotional impact of illegal termination was itself sufficient to support such award. *See Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1348-49 (11th Cir. 2000) (affirming jury award of $150,000 for emotional distress caused by illegal termination under FCRA).

24. Thus, to the extent Plaintiffs purport to seek emotional distress damages, **$15,000.00**, respectively, for pain and suffering is a very conservative estimate to include in the amount in controversy calculation. This does not include potential recovery for punitive damages, which further increases the amount in controversy for the purposes of diversity jurisdiction. *See Wineberger*, 2015 WL 225760 at *4 (considering punitive damages under the FCRA in determining amount in controversy).

25. Courts may also consider jury verdicts rendered in matters raising similar claims and injuries. *See, e.g., Payne v. J.B. Hunt Transp., Inc.*, 154 F. Supp. 3d 1310, 1314 (M.D. Fla. 2016) (reviewing evidence of settlements and jury verdicts together with the allegations of plaintiff's complaint to conclude "it [was] more likely than not that the amount in controversy exceeds $75,000."); *Gardner v. Mgmt. & Training Corp.*, 2014 WL 3039335, at *2 (N.D. Fla. July 3, 2014) (considering proffered jury verdict research in determining whether the amount in controversy exceeds $75,000); *see also Schmidt v. Pantry, Inc.*, 2012 WL 1313490, at *3-4 (N.D. Fla. Mar. 6, 2012) (considering jury verdicts from other Florida courts when determining emotional distress damages in an employment discrimination case exceeded the amount in controversy requirement). Importantly, "[a] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Payne*, 154 F. Supp. 3d at 1313 (internal quotation marks omitted; emphasis added) (citing *Pretka*, 608 F.3d at 754). The examples listed below represent potential jury verdicts Plaintiffs could respectively obtain at trial based on jurisdiction, counsel, and claims.

   a. In *Kendrick v. The Meadows LLC*, 2017 WL 4767032 (Fla. Cir. Ct. 2017), a Leon County jury hearing a case brought by the same firm currently representing

9

        Plaintiffs in this action, awarded the plaintiff a total verdict of $4m ($350,000 for pain and suffering; $45,000 for past wages; $14,000 in other compensatory damages; and punitive damages of $3.6m). Plaintiff (black) alleged race discrimination and retaliation under the FCRA and Title VII. Like the case at bar, the *Kendrick* plaintiff claimed he suffered a hostile work environment, and disparate treatment from similarly-situated white employees. The alleged adverse actions included claims of constructive discharge, failure to grant leave, failure to promote/hire, losses of benefits, pay, and seniority, pay reduction, and termination. Further, the plaintiff in *Kendrick* noted that he was fired one day after requesting materials to file a workers' compensation claim. Plaintiffs' allegations in this case reference similar claims.

b.        In *Knowles v. Quantum Rail Services, Inc.*, 2002 WL 34705129 (Fla. Cir. Ct. 2002), a 36-year old black male painter sued the defendant for race discrimination in violation of state and federal laws. The plaintiff alleged that he was subjected to harassment because of his race and was wrongfully terminated when he left work for a personal emergency. Similar to the present matter, the *Knowles* plaintiff further alleged similarly-situated white employees were not terminated for similar events. The defendant denied the allegations and claimed that the plaintiff was terminated for misconduct and had not filed a formal complaint with the state Commission on Human Relations. Ultimately, the Duval County jury awarded the plaintiff a total verdict of $203,890 ($3,890 for past wages; $20,000 for pain and suffering; and punitive damages of $23,890).

c.  In *Austrum v. Federal Cleaning Contractors, Inc.*, 2016 WL 1033602 (S.D. Fla. 2016), a former janitorial supervisor sued the defendant for race and national origin discrimination under Title VII. The plaintiff, a black male, whose national origin is Barbados, claimed that on several occasions, a project manager, who is Hispanic, made comments indicating a preference for Hispanic workers over non-Hispanic workers. For example, the plaintiff alleged that the project manager said he had to 'look out for his people,' and if anyone had to be fired it would be a non-Hispanic rather than a Hispanic worker. The plaintiff argued that FBS decided not to hire him, and discarded his application, and that his race and/or national origin was a motivating factor which prompted the defendant not to hire him for a job with the company. The defendant denied the allegations and contended all actions taken regarding the plaintiff's employment were wholly unrelated to race. Ultimately, the jury returned a total verdict $172,195 ($24,065 for pain and suffering; $48,130 for past wages; and $100,000 for punitive damages).

d.  In *White v. North Florida Rock Ltd.*, 2012 WL 3901612 (N.D. Fla. 2012), a plaintiff sued for race discrimination and retaliation under the FCRA and Title VII. The plaintiff, an African-American represented by the same counsel representing the current Plaintiffs, alleged he was subjected to disparate treatment because of his race, that his time card was pulled on a regular basis to determine if he was late, and other, similar conduct, while other white employee who engaged in similar conduct, were not disciplined. The plaintiff contended that because of his race, he was subjected to a hostile work environment and poor treatment by his white supervisor, who referred to him in a derogatory manner, but when he reported

11

the unlawful practice to the owner, the hostility continued, and he became a victim of retaliation. He asserted that the discrimination finally culminated in his termination after he was involved in an accident with a white heavy equipment operator when they backed into each other. The defendant denied the allegations and contended that the plaintiff was originally fired in 2007 for continuously arriving late for work, but did not report any discrimination at that time. The jury returned a total verdict of $140,040 ($15,040 for past wages; and $125,000 for pain and suffering).

e.         In *Hill v. City of Tallahassee*, 1995 WL 537546 (Fla. Cir. Ct. 1995), a black female firefighter alleged emotional distress for harassment and discrimination by a co-defendant fire inspector. Even though the defendants denied any wrongdoing, the Leon County jury awarded the plaintiff $120,000 in pain and suffering.

## VI.   **PUNITIVE DAMAGES**

26.   Under the FCRA, Plaintiffs may seek punitive damages of up to $100,000 as a potential remedy. *See* Fla. Stat. § 760.11(5). As the court ruled in *Cunningham Lindsey U.S.*, "[w]hen determining the jurisdictional amount in controversy in diversity cases, *punitive damages must be considered, . . . unless it is apparent to a legal certainty that such cannot be recovered.*" *Id.* at *16 (internal quotation marks omitted; emphasis added). As in *Cunningham Lindsey U.S.,* nothing in Plaintiffs' Complaint "indicates that [they are] seeking less than the maximum allowable amount of punitive damages." *Id.* at *17.

## VII.   **ATTORNEYS' FEES**

27.   Adding Plaintiffs' respective claims for attorneys' fees, which are recoverable under the FCRA, to the amount in controversy calculation, there is no question the amount

in controversy significantly exceeds $75,000.00. *See Penalver*, 2012 WL 1317621 at *3 (including reasonable attorney's fees in amount of controversy calculation); *Schmidt*, 2012 WL 1313490 at *4 (writing "[i]n assessing the reasonable attorney's fees in a case for purposes of determining the amount in controversy for jurisdictional purposes, because entitlement to fees [under FCRA] is only triggered if the Plaintiff prevails, the Court will estimate the reasonable attorney's fees through trial.").

28. Plaintiffs' counsel could be expected to expend at least 200 hours prosecuting this case, which would include multiple witness depositions, drafting and answering discovery, time spent briefing oppositions to Defendant's Motion for Summary Judgment and preparing for and attending a multiple day trial. Even at a conservative hourly rate of $250, Plaintiffs would incur at least $50,000 in attorneys' fees. Adding Plaintiffs' claim for attorneys' fees, to the amount in controversy calculation, there is no question the amount in controversy significantly exceeds $75,000.00. *See Penalver*, 2012 WL 1317621 at *3 (including reasonable attorney's fees in amount of controversy calculation).

29. Considering all of the above, Plaintiff-Washington's estimate for lost pay is approximately $153,000; $141,000 for Plaintiff-Daniels; and $135,000 for Plaintiff-Williams.

30. Because the amount in controversy exceeds $75,000.00, exclusive of interest and costs as to each Plaintiff, and the action is between citizens of different states, the District Court has original jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(a). Thus, this case may be removed to this Court by Defendant pursuant to 28 U.S.C. §§ 1441 and 1446.

## VIII.  NOTICE AND TIMELINESS

31. Finally, this Notice of Removal has been given to Plaintiff and has been promptly filed with the Clerk of the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida. A copy of the Notice of Filing Notice of Removal (without exhibits) is attached hereto as Exhibit "D."

32. The required filing fee and executed civil cover sheet accompany this Notice.

WHEREFORE, Defendant respectfully removes this action, pending in the Second Judicial Circuit in and for Leon County, Florida to the United States District Court in the Northern District Court of Florida, Tallahassee Division.

Dated: Friday, September 18, 2020.

    Respectfully submitted,

    LITTLER MENDELSON, P.C.
    111 N. Orange Avenue, Suite 1750
    Orlando, Florida 32801-2366
    Telephone: (407) 393-2900
    Facsimile: (407) 393-2929

BY:    */s/ Jason D. Byrd*
    Jeffrey B. Jones
    Fla. Bar No.: 39950
    Email: jbjones@littler.com

    Jason D. Byrd
    Fla. Bar No.: 123508
    Email: jabyrd@littler.com

    *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this 18th day of September, 2020, I electronically served the foregoing via e-Portal which will forward a copy to the following: Marie A. Mattox, Esq., Marie A. Mattox, P.A., 203 N, Gadsden Street, Tallahassee, Florida 32303, Email: marie@mattoxlaw.com, marlene@mattoxlaw.com, and michelle@mattoxlaw.com.

                                              */s/ Jason D. Byrd*
                                              Jason D. Byrd, Esquire